IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MEDTRONIC, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. No. 07-823-SLR/LPS |
| | ) | |
| BOSTON SCIENTIFIC CORPORATION, GUIDANT CORPORATION and MIROWSKI FAMILY VENTURES, L.L.C., | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

Arthur G. Connolly III, Esquire and Meredith Gaudio, Esquire of Connolly Bove Lodge & Hutz LLP, Wilmington, Delaware. Counsel for Plaintiff. Of Counsel: Martin R. Lueck, Esquire, Jan M. Conlin, Esquire, Richard M. Martinez, Esquire, and Sharon E. Roberg-Perez, Esquire of Robins, Kaplan, Miller & Ciresi LLP, Minneapolis, Minnesota.

Richard L. Horwitz, Esquire and David E. Moore, Esquire of Potter Anderson & Corroon LLP, Wilmington, Delaware. Counsel for Defendants. Of Counsel: Arthur I. Neustadt, Esquire of Oblon, Spivak, McClelland, Maier & Neustadt, P.C., Alexandria, Virginia.

**MEMORANDUM OPINION**

Dated: November 21, 2008
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

Plaintiff Medtronic, Inc. ("Medtronic") filed its complaint for declaratory judgment of non-infringement and invalidity of United States Patent Nos. RE 38,119 ("the '119 reissue patent") and RE 39,897 ("the '897 reissue patent") on December 17, 2007, naming as defendants Boston Scientific Corporation ("BSC"), Guidant Corporation ("Guidant"), and Mirowski Family Ventures LLC ("MFV").[1] (D.I. 1)  Medtronic's complaint contains a jury trial demand.  (*Id.*)  BSC and Guidant filed an answer on February 2, 2008.  (D.I. 18)  That same day, MFV filed an answer and asserted a counterclaim against Medtronic.  (D.I. 20)  MFV's counterclaim seeks a declaratory judgment that MFV is entitled to payment pursuant to an escrow agreement between Medtronic and MFV.  (*Id.*)  Medtronic filed its answer to MFV's counterclaim on February 28, 2008.  (D.I. 23)

MFV moved to strike Medtronic's jury trial demand on April 24, 2004.  (D.I. 33)  On May 12, 2008, Medtronic moved to dismiss MFV's counterclaim or, in the alternative, to sever and transfer the counterclaim to the United States District Court for the Southern District of Indiana, where other litigation between the parties is pending.  (D.I. 40)  The court heard oral argument on the motion to dismiss on July 17, 2008.  For the reasons that follow, the court denies Medtronic's motion and grants MFV's motion.

## II. BACKGROUND

### A. The Parties and Litigation History

---

[1] On November 5, 2008, Medtronic amended its complaint to assert a defense of "prosecution laches."  (D.I. 84)

Medtronic, BSC, and Guidant are all leading manufacturers and sellers of coronary stents. MFV is the entity that holds the patent rights of Michel Mirowski, MD, inventor of the implantable cardiac defibrillator ("ICD"). One such patent is United States Patent No. 4,407,288 ("the '288 patent"), which discloses "multimode" operation for an ICD. Eli Lilly & Co. ("Lilly") was formerly the exclusive licensee of Dr. Mirowski's patents; following litigation between Lilly and Medtronic, Medtronic became a Lilly sublicensee in 1991. The license agreement between Medtronic and Lilly ("the Lilly Agreement") settled several lawsuits and granted licenses to Medtronic under the '288 patent and, amongst others, United States Patent No. 4,582,191 ("the '191 patent"). The Lilly Agreement provided that Medtronic could challenge validity and infringement of the '288 and '191 patents without breaching the license, provided that Medtronic filed a declaratory judgment action and paid the royalties that would otherwise be due into an escrow account. (D.I. 41, ex. G at 6-7) The Lilly Agreement was executed on May 13, 1991.

In 1996, MFV and its licensees[2] filed a patent infringement suit in the Southern District of Indiana alleging that St. Jude Medical, Inc., Pacesetter, Inc. and Ventitrex, Inc. (collectively, "St. Jude") infringed the '288 patent and, additionally, U.S. Patent No. 4,316,472 ("the '472 patent"), another ICD patent.[3] (S.D. Ind. Civ. A. No. 96-1718,

---

[2] Cardiac Pacemakers, Inc. ("CPI"), Guidant, and Lilly.

[3] Two additional patents were originally asserted; one (U.S. Patent No. 4,223,678) expired prior to trial, and the other (U.S. Patent No. 4,572,191) was held invalid before trial as a result of the court's claim construction process. *See Cardiac Pacemakers, Inc. v. St. Jude Medical, Inc.*, No. Civ. A. 96-1718, 2002 WL 1801525 (S.D. Ind. July 5, 2002).

2

hereinafter "the St. Jude case") In 2001, a jury returned a verdict that St. Jude infringed the '472 patent, which it held valid, but that St. Jude did not infringe the '288 patent, which it also found valid. *See Cardiac Pacemakers,* 2002 WL 1801525 at *2. More specifically, the jury rejected St. Jude's argument that the '288 patent is invalid because the inventors violated the "best mode" requirement of 35 U.S.C. § 112 ¶ 1 by failing to disclose in the patent a custom-designed battery for the patented ICD. *Id.* at *33. The jury awarded royalty damages on the '472 patent totaling $140 million. *Id.* Following trial, the Honorable David F. Hamilton overturned the jury verdict and entered judgment for St. Jude on all issues, finding the '288 patent invalid as a matter of law on best mode and obviousness grounds. *Id.* at *77.

Following Judge Hamilton's February 13, 2002 opinion[4] finding the '288 patent invalid, Medtronic filed a declaratory judgment action in the Southern District of Indiana on February 27, 2002, naming Guidant, Lilly, CPI and MFV[5] as defendants. (S.D. Ind. Civ. A. No. 02-0328, hereinafter "the Medtronic Indiana case") Medtronic sought judgment that: (1) the Lilly Agreement serves to bar defendants from asserting against it infringement of either the '191 patent or the '288 patent; (2) it does not infringe the '191 patent or the '288 patent; (3) no royalties are due under the Lilly Agreement; and (4) the '288 patent is not entitled to a patent term extension by the PTO, rendering it expired. (D.I. 41, ex. D)

In August 2002, all parties to the St. Jude case appealed Judge Hamilton's

---

[4]Judge Hamilton issued a superceding opinion on July 5, 2002, cited *supra*.

[5]At that time, named as the Estates of Dr. Mieczyslaw Mirowski and Anna Mirowski.

judgment of invalidity and non-infringement of claims 4 and 13 of the '288 patent.[6] On April 3, 2003, the parties to the Medtronic Indiana case agreed to stay that case pending appeal, and Judge Hamilton entered an order staying "all proceedings in [the Medtronic Indiana case] . . . until thirty (30) days after the appellate process in [the St. Jude case] has been exhausted[.]"[7] (D.I. 41, ex. E) The Medtronic Indiana case has laid dormant since that time.

By a letter dated April 4, 2003, an agreement between Medtronic, Guidant, Lilly and MFV was memorialized whereby, *inter alia*: (1) the parties agreed to stay the Medtronic Indiana case pending the appeal of the St. Jude case; (2) with respect to the royalty payments contemplated under the Lilly Agreement, Medtronic would release its claim to the November 2001 royalty payment made "under protest," would pay to MFV 80% of the February 2002 royalty payment, and would pay into an escrow account the balance of the February 2002 royalty payment plus all future royalty payments, consistent with various "scenarios" outlined below:

Scenario A

- The CAFC's ruling on the best mode invalidity is vacated; and
- The CAFC's ruling on the section 103 invalidity is vacated; and
- The claim 4 step reciting "determining a condition of the heart from among a plurality of conditions of the heart" is construed not to be a step-plus-function element under section 112, paragraph 6, but is construed to be

---

[6]The Federal Circuit did not permit MFV to shift the $140 million in damages from the '472 patent to the '288 patent at issue in the appeal, regardless of the fact that the same evidence was presented with respect to both patents. *See Cardiac Pacemakers, Inc. v. St. Jude Medical, Inc.*, 381 F.3d 1371, 1383 (Fed. Cir. 2004).

[7]This language mirrored that provided by the parties, namely, that "this action should be stayed pending the exhaustion of the appellate process in [the St. Jude case]." (D.I. 41, ex. F)

4

> "determining a condition of the heart from among a plurality of conditions of the heart" without any limitation whatsoever (the "Guidant Claim Construction"); and
> - The CAFC's ruling on the extension of the '288 patent is affirmed; and
> - All of the foregoing events in this Scenario A occur in a non-appealable final judgment.
>
> *Result:*
> Upon the CAFC's entry of non-appealable final judgment in the [St. Jude case] as described in this Scenario A, [MFV] shall notify the escrow agent and request that the escrow agent distribute the entire escrow fund fo [MFV]. . . .
>
> Scenario B
>
> - Either the best mode or the section 103 invalidity finding is affirmed in a non-appealable final judgment; or
> - The '288 patent term extension is found invalid in a non-appealable final judgment.
>
> *Result:*
> Upon the CAFC's entry of non-appealable final judgment . . . [Medtronic] shall so notify the escrow agent and request that the escrow agent distribute the entire escrow fund to [Medtronic]. . . .
>
> Scenario C
>
> - Both the best mode and the section 103 judgments are vacated and the section 112, paragraph 6 ruling is affirmed; or
> - The CAFC adopts any claim construction other than the Guidant Claim Construction; or
> - Any other decision or outcome not covered in Scenarios A or B.
>
> *Result:*
> The escrow agent shall continue to hold and invest the escrow fund in accordance with the terms of this agreement until it receives the joint written instructions of [MFV] and [Medtronic] regarding the distribution of the escrow fund[.] . . .

(D.I. 41, ex. H) The terms of the settlement agreement were incorporated into an escrow agreement executed by Medtronic, MFV and Wachovia Bank (the escrow agent) on April 30, 2003 (collectively, "the 2003 agreements"). (D.I. 53, ex. C)

5

In September 2004, the Federal Circuit vacated Judge Hamilton's grant of judgment as a matter of law that the '288 patent is invalid. *See Cardiac Pacemakers*, 381 F.3d at 1380, 1383. Specifically, the Court found that substantial evidence supported the jury's verdict that the claimed inventions would not have been obvious, and that the best mode requirement had not been violated. *Id.* at 1378, 1379. With respect to the parties' claim construction arguments, the Court found that Judge Hamilton erred in applying § 112 ¶ 6 to the "determining a condition of the heart from among a plurality of conditions of the heart" limitation. *Id.* at 1382. The Court, therefore, remanded the St. Jude case for a new claim construction and, if necessary, a new trial in view thereof. *Id.* at 1383. Certiori was denied. *See St. Jude Medical, Inc. v. Cardiac Pacemakers, Inc.*, 544 U.S. 1032 (2005).

Following remand of the St. Jude case to the district court in 2005, the parties submitted new claim construction briefs and cross-moved for summary judgment. Judge Hamilton construed the limitation at issue, and disposed of several of the parties' pending motions in his opinion dated March 1, 2006. *See Cardiac Pacemakers, Inc. v. St. Jude Medical, Inc.*, 418 F. Supp. 2d 1021, 1024 (S.D. Ind. 2006). The Federal Circuit denied CPI's subsequent motion for a writ of mandamus. *In re Cardiac Pacemakers, Inc.*, 183 Fed. Appx. 967 (Fed. Cir. 2006).

In July 2006, Medtronic, MFV and Guidant executed a License Tolling Agreement ("the LTA") providing that Medtronic would file a declaratory judgment action in Delaware on the '119 and '897 reissue patents. (D.I. 41, ex. A) Under the LTA,

Medtronic agreed to pay disputed royalties based on MFV's infringement allegations into an escrow account ("the LTA escrow account"). (*Id.* at ¶ 10(a)) These moneys would be distributed "in a manner consistent with the decision in the [declaratory judgment] action" if filed by Medtronic.[8] (*Id.* at ¶ 11)

Because the parties to the St. Jude case were unsuccessful in their prior settlement discussions, Judge Hamilton turned to the remaining summary judgment motions in 2007. On March 26, 2007, the court found the remaining method claim of the '288 patent infringed but invalid as anticipated, and entered final judgment for St. Jude. *See Cardiac Pacemakers, Inc. v. St. Jude Medical, Inc.*, 483 F. Supp. 2d 734, 745 (S.D. Ind. 2007). The parties appealed the judgment in April 2007; that appeal (No. 2007-1296) is still pending before the Federal Circuit.

The declaratory judgment complaint in the present action was filed (pursuant to the LTA) on December 17, 2007, naming as defendants BSC, Guidant, and MFV. (D.I. 1) Medtronic seeks a judgment of non-infringement and invalidity of the '119 and '897 reissue patents assigned to MFV. (*Id.*) The '119 and '897 reissue patents describe a method for treating hemodynamic dysfunction by using electrodes to simultaneously stimulate the ventricles of the heart. On February 2, 2008, MFV filed its answer containing a counterclaim against Medtronic seeking a declaratory judgment that MFV

---

[8]"For example, if certain Medtronic products are held not to infringe the '119 [reissue] patent, but do infringe one or more subsequent reissue patent(s) [claiming priority to U.S. Patent No. RE 38,119], then Medtronic would be entitled to recover the portion of the [LTA escrow] account for sales and interest prior to the issuance of the subsequent reissue patent(s) while [MFV] would be entitled to recover the portion of the [LTA escrow] account for sales and interest after the issuance of the subsequent reissue patent(s) that Medtronic's products were held to infringe." (D.I. 41, ex. A at ¶ 11)

is entitled to payment pursuant to the 2003 agreements. (D.I. 20)

## III. LEGAL STANDARDS

### A. Motion to Dismiss

Rule 12(b)(6) permits a party to move to dismiss a complaint for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). The purpose of a motion to dismiss is to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits of the case. *See Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). To that end, the court assumes that all factual allegations in a Medtronic's pleading are true, and draws all reasonable factual inferences in the light most favorable to Medtronic. *See Amiot v. Kemper Ins. Co.*, 122 Fed. Appx. 577, 579 (3d Cir. 2004). However, the court rejects "unsupported allegations," "bald assertions," and "legal conclusions." *Id.*

### B. Motion to Transfer

Under 28 U.S.C. § 1404(a), a district court may transfer any civil action to any other district where the action might have been brought for the convenience of parties and witnesses and in the interests of justice. Congress intended through § 1404 to place discretion in the district court to adjudicate motions to transfer according to an individualized, case-by-case consideration of convenience and the interests of justice. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988); *Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp. 2d 192, 208 (D. Del. 1998).

The burden of establishing the need to transfer rests with the movant "to establish that the balance of convenience of the parties and witnesses strongly favors

is entitled to payment pursuant to the 2003 agreements. (D.I. 20)

## III. LEGAL STANDARDS

### A. Motion to Dismiss

Rule 12(b)(6) permits a party to move to dismiss a complaint for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). The purpose of a motion to dismiss is to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits of the case. *See Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). To that end, the court assumes that all factual allegations in a Medtronic's pleading are true, and draws all reasonable factual inferences in the light most favorable to Medtronic. *See Amiot v. Kemper Ins. Co.*, 122 Fed. Appx. 577, 579 (3d Cir. 2004). However, the court rejects "unsupported allegations," "bald assertions," and "legal conclusions." *Id.*

### B. Motion to Transfer

Under 28 U.S.C. § 1404(a), a district court may transfer any civil action to any other district where the action might have been brought for the convenience of parties and witnesses and in the interests of justice. Congress intended through § 1404 to place discretion in the district court to adjudicate motions to transfer according to an individualized, case-by-case consideration of convenience and the interests of justice. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988); *Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp. 2d 192, 208 (D. Del. 1998).

The burden of establishing the need to transfer rests with the movant "to establish that the balance of convenience of the parties and witnesses strongly favors

the defendants." *Bergman v. Brainin*, 512 F. Supp. 972, 973 (D. Del. 1981) (citing *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970)). "Unless the balance is strongly in favor of a transfer, the Medtronic's choice of forum should prevail." *ADE Corp. v. KLA-Tencor Corp.*, 138 F. Supp. 2d 565, 567-68 (D. Del. 2001); *Shutte*, 431 F.2d at 25. The deference afforded Medtronic's choice of forum will apply as long as a Medtronic has selected the forum for some legitimate reason. *C.R. Bard, Inc. v. Guidant Corp.*, 997 F. Supp. 556, 562 (D. Del. 1998); *Cypress Semiconductor Corp. v. Integrated Circuit Systems, Inc.*, No. Civ. A. 01-199, 2001 WL 1617186, at *2 (D. Del. Nov. 28, 2001); *Continental Cas. Co. v. American Home Assurance Co.*, 61 F. Supp. 2d 128, 131 (D. Del. 1999). Although transfer of an action is usually considered as less inconvenient to a Medtronic if the Medtronic has not chosen its "'home turf' or a forum where the alleged wrongful activity occurred, the Medtronic's choice of forum is still of paramount consideration, and the burden remains at all times on the defendants to show that the balance of convenience and the interests of justice weigh strongly in favor of transfer." *In re M.L.-Lee Acquisition Fund II, L.P.*, 816 F. Supp. 973, 976 (D. Del. 1993).

The Third Circuit Court of Appeals has indicated that the analysis for transfer is very broad. *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995). Although emphasizing that "there is no definitive formula or list of factors to consider," *id.*, the Court has identified potential factors it characterized as either private or public interests. The private interests include: "(1) Medtronic's forum preference as manifested in the original choice; (2) defendant's preference; (3) whether the claim arose elsewhere; (4)

the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)." *Id.* (citations omitted). The public interests include: "(1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases." *Id.* (citations omitted).

### C. Motion to Strike

"In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law." U.S. Const., amend. VII. Two factors are considered in determining whether a suit is "at common law": (1) the nature of the action; and (2) the remedy sought. *Tull v. United States*, 481 U.S. 412, 417 (1987). The nature of the action is analyzed "by compar[ing] the [action at issue] to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity." *Id.* If the action resembles those brought in English law courts, it is tried by a jury. *Id.* If an action is more analogous to 18th-century cases tried in courts of equity or admiralty, it does not require a jury trial. *Id.* Courts also "examine the remedy sought and determine whether

it is legal or equitable in nature." *Id.* at 417-18. Finally, a private litigant may waive its Seventh Amendment right to a jury trial in a civil case as long as the waiver is knowing and voluntary based on the facts of the case. *See Tracinda Corp. v. DaimlerChrysler AG*, 502 F.3d 212, 222-23 (3d Cir. 2007) (citations omitted); *see also First Union Nat'l Bank v. United States*, 164 F. Supp. 2d 660, 663 (E.D. Pa. 2001) (listing factors).

## IV. DISCUSSION

### A. Motion to Dismiss MFV's Counterclaim or, in the Alternative, to Transfer

Medtronic asserts that MFV's counterclaim should be dismissed pursuant to the first-filed rule,[9] insofar as "[t]he [Medtronic] Indiana action and [MFV's] counterclaim relate to the same claims and set of operative facts[.]" (D.I. 41 at 7-8) Alternatively, Medtronic asserts that the counterclaim should be transferred, as: (1) the "'288 counterclaim is completely unrelated to the '119 and '897 [reissue] patents that are the subject of [Medtronic's] [c]omplaint before th[e] court" (*id.* at 10); (2) MFV concedes that the counterclaim bears no relation to the rest of the claims in this litigation, which deal with the infringement and validity of the reissue patents; (3) Judge Hamilton has presided over litigation concerning the '288 patent since 1996; and (4) the private and public interests weigh strongly in favor of transfer.

Medtronic and MFV have (in essence) voluntarily bifurcated their disputes,

---

[9]Under the "first-filed" rule, "[i]n all cases of federal competent jurisdiction, the court which first has possession of the subject must decide it." *E.E.O.C. v. Univ. of PA*, 850 F.2d 969, 970 (3d Cir.1988) (quotation omitted). The rule "gives a court the power to enjoin the subsequent prosecution of proceedings involving the same parties and the same issues already before another district court." *Id.* at 971 (internal quotations and citation omitted). The first to file rule does not require the parties to each suit be identical, only that the issues be the same. *See Time Warner Cable, Inc. v. GPNE Corp.*, 497 F. Supp. 2d 584, 589-90 (D. Del. 2007) (citations omitted).

11

having liability determined by the courts and damages through their consensual business arrangements (the 2003 agreements and the LTA) based on the liability findings of the courts. Therefore, the 2003 agreements are related to the Medtronic Indiana case (just as the LTA is related to the case at bar), and there is a certain symmetry to having the 2003 agreements (fixing damages for the '288 patent) interpreted and enforced by the court that determined liability under the '288 patent in the first instance[10] (just as this court will determine liability under the '119 and '897 reissue patents subject to the LTA). Nevertheless, the 2003 agreements are independent contracts entered into by the parties; the parties (sophisticated as they are) failed to indicate in the 2003 agreements a choice of forum[11] nor were the 2003 agreements filed as stipulations in the Medtronic Indiana case. Given the fact that the Medtronic Indiana case is stayed and the fact that the motion addresses a counterclaim, not the entire case at bar, the court concludes that neither dismissal under the "first-filed rule" nor transfer is appropriate at this juncture, under these circumstances. Medtronic's motion to dismiss or transfer, therefore, is denied without prejudice to renew. Resolution of MFV's counterclaim shall be stayed pending disposition of Medtronic's complaint in the case at bar. (*See* D.I. 53 at 7)

### B. Motion to Strike Medtronic's Jury Trial Demand

Medtronic asserts that "[t]he [License and Tolling] Agreement directly ties

---

[10] In most instances, of course, the Federal Circuit ultimately will determine liability.

[11] The 2003 escrow agreement does include a provision mandating the governing law, that of the State of Minnesota. (D.I. 53, ex. C at 7)

distribution of any funds in th[e Delaware escrow] account to the resolution of this litigation; therefore, "[a]t the very center of this dispute is the tens of millions of potential damages for alleged past infringement currently in that account." (D.I. 38 at 2) MFV asserts that because Medtronic's complaint in the present action is pursuant to the LTA, and seeks only a declaration that Medtronic does not infringe, Medtronic is not entitled to a jury trial. (D.I. 34 at 2, citing *Kao Corp. v. Unilever United States, Inc.*, Civ. No. 01-680, 2003 WL 1905635, *3 (D. Del. Apr. 17, 2003) ("[A]n alleged infringer has no entitlement to a trial by jury by virtue of pleading counterclaims asserting noninfringement and invalidity, claims which are equitable in nature with no attendant right to damages."))

Medtronic seeks a declaration that its accused devices do not infringe any valid or enforceable claim of the '119 or '897 patents. (D.I. 1 at 8) Medtronic makes no money demand.

> [T]he accused infringer or declaratory judgment counterclaimant is entitled to a jury trial only if the infringement claim, as asserted by the patentee, would give rise to a jury trial. Thus, if the patentee seeks only equitable relief, the accused infringer has no right to a jury trial, regardless of whether the accused infringer asserts invalidity as a defense . . . or as a separate claim[.]

*In re Technology Licensing Corp.*, 423 F.3d 1286, 1290-91 (Fed. Cir. 2005). In this case, the LTA agreement provides that when this action is concluded, Medtronic will "cause distribution of the total amount in the [LTA escrow account] in a manner consistent with the decision in the [declaratory judgment] action." (D.I. 41, ex. A at ¶ 11) If Medtronic wins, it can recover the portion of the escrow corresponding to non-infringing products. If MFV wins, Medtronic must continue to pay royalties. (*Id.*) No damages are contemplated. Even if MFV had initiated the present action, it would seek

only to compel royalties due under the parties' contract. The fact that, if it is successful, Medtronic may ultimately get money (from the LTA escrow account) does not render Medtronic's claims "legal" by their nature. Because it is clear that only equitable relief is sought, the court grants MFV's motion to strike Medtronic's jury demand. *See Kao Corp.*, 2003 WL 1905635 at *3.

## V. CONCLUSION

For the aforementioned reasons, the court denies Medtronic's motion (D.I. 40) and grants MFV's motion (D.I. 33). An appropriate order shall issue.