IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MEDTRONIC, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. No. 07-823-SLR |
| | ) | |
| BOSTON SCIENTIFIC CORPORATION, | ) | |
| GUIDANT CORPORATION, AND | ) | |
| MIROWSKI FAMILY VENTURES L.L.C., | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |

**MEMORANDUM**

At Wilmington this 5th day of May, 2015, having reviewed plaintiff's motion for attorney fees pursuant to the parties' agreement (D.I. 283), and the papers filed in connection therewith; the court issues its decision based on the following reasoning:

1. **Background.** Plaintiff Medtronic, Inc. ("Medtronic") filed this complaint on December 17, 2007, against Boston Scientific Corporation ("BSC"), Guidant Corporation ("Guidant"), and Mirowski Family Ventures LLC ("MVF," collectively "defendants") for declaratory judgment of non-infringement and invalidity of United States Reissued Patent Nos. RE 38,119 ("the '119 patent") and RE 39,897 ("the '897 patent," collectively "the reissue patents").[1] (D.I. 1) The court held a five-day bench trial on January 25-28 and March 13, 2010. After post-trial briefing, the court concluded on March 30, 2011 that defendants did not prove that Medtronic infringed the asserted claims. (D.I. 256; D.I. 257) After a lengthy appeal process, the Federal Circuit affirmed the court's finding

---

[1] The court has jurisdiction pursuant to 35 U.S.C. §§ 1 et seq. and 28 U.S.C. §§ 1331, 1338(a), 1400(b) and 2201.

of non-infringement. *Medtronic Inc. v. Boston Scientific Corp.*, 558 F. App'x 998 (Fed. Cir. 2014).

  2. From 1973 to 2004, Ely Lilly & Co. ("Lilly") held an exclusive license to the MVF patents. (D.I. 289 at 2) Lilly entered into a license agreement[2] with Medtronic in 1991 ("the 1991 Agreement"), which included a sublicense to the MVF patents, including the '119 and '897 patents. (D.I. 285, ex. A) The 1991 Agreement provided in part that if Lilly or MVF believed a new Medtronic device infringed the MVF patents and Medtronic did not pay royalties, "Lilly shall notify Medtronic of such infringement." (*Id.* at 6) If Medtronic then failed to pay the royalties during the cure period, "Lilly shall have the right to terminate the sublicense as to that MVF Patent(s)." (*Id.*)

> If Medtronic pays the royalty, Medtronic shall, while maintaining its sublicense under the License Agreement, have the right to challenge the validity and enforceability of any patent under the [MVF] license . . . and shall have the right to challenge Lilly's assertion of infringement of any [MVF] patents through a Declaratory Judgment action.

(*Id.*)

The 1991 Agreement also provided:

> In any such litigation, the losing party shall pay all reasonable attorneys' fees and court costs for the winning party and, if Medtronic is the winning party, all royalties paid from the date Medtronic files suit shall immediately be refunded to Medtronic . . . . In any such litigation if Medtronic is found not to have any royalty obligations with respect to the products in dispute then it shall be considered the winning party.

(*Id.*) In 2004, MVF consented to Lilly's assignment of all its rights and obligations under the prior agreements to Guidant. BSC acquired Guidant in 2006, at which time Guidant became a wholly-owned subsidiary of BSC. (D.I. 289 at 4 & n.3)

---

[2] Signed by Lilly, CPI ("a wholly owned subsidiary of Lilly"), and Medtronic. (D.I. 285, ex. A at 1, 13-14)

2

3. In 2003 and 2004, Medtronic, Guidant, Lilly and MVF entered into separate agreements to govern two litigations, which each included a provision that, notwithstanding the 1991 agreement, the parties would bear their own costs and fees. (D.I. 284 at 3; D.I. 288 at 4-5; D.I. 285, ex. C-D) In 2006, the parties entered into a Litigation Tolling Agreement[3] ("LTA"), which controlled the litigation at bar. (D.I. 284 at 4-5; D.I. 285, ex. E) The LTA provided in part that Guidant (as Lilly's successor in interest to the reissue patents) or MVF may notify Medtronic of infringement of the '119 patent and any subsequent reissue patents. (D.I. 285, ex. E at 5, ¶ 7(c)) Medtronic would distribute the royalties accumulated in a specified account consistent with the decision in the declaratory judgment action. (Id., ex. E at 7-8, ¶¶ 10-11) If a dispute arose over the distribution of royalties and the court ruled in favor of MVF, "Medtronic shall reimburse Guidant and/or [MVF] for all of [its] or their attorney's fees and other costs incurred in prosecuting such action." (Id., ex. E at 8, ¶ 11) The LTA further states that:

> Except for the August 28, 2003 Settlement Agreement, the [1991] Agreement, and the Amended Original Agreement, this Agreement constitutes the entire agreement and understanding of the Parties with regard to the subject matter hereof and merges and supersedes all prior discussions, negotiations, understandings and agreements among the Parties concerning the subject matter hereof. The [1991] Agreement shall be considered to be amended as necessary to conform with this Agreement.

(Id. at 8, ¶ 15)

4. On October 3 and November 20, 2007, MVF notified Medtronic of infringement pursuant to ¶ 7 (c) of the 2006 LTA. (D.I. 290, ex. 3) Medtronic then filed

---

[3] Signed by MVF, Guidant, and Medtronic.

3

this action for declaratory judgment on December 17, 2007 under the terms of the LTA. (D.I. 1 at ¶ 23; D.I. 108 at ¶ 25) The complaint requests attorney fees pursuant to the 1991 agreement and 35 U.S.C. § 285. (D.I. 108 at 9) In the pre-trial order, Medtronic stated that "[t]he Court must determine whether Medtronic is entitled to attorneys' fees . . . because this is an exceptional case under 35 U.S.C. § 285." (D.I. 177, ex. 4 at 13; D.I. 288 at 6) The court entered a judgment for Medtronic as to non-infringement of the '119 and '897 patents on March 30, 2011. (D.I. 257; D.I. 258) As MVF's counterclaim under the separate '288 patent was still pending, Medtronic and MVF jointly moved for certification of the March 30, 2011 judgment under Fed. R. Civ. P. 54(b). (D.I. 262) The court directed entry of a final judgment under Rule 54(b) on April 12, 2011. (D.I. 263) The parties then stipulated to the dismissal with prejudice of MVF's counterclaim under the '288 patent on May 18, 2011. (D.I. 268)

5. **Timeliness.** The Federal Rules of Civil Procedure provide that "[a] claim for attorney's fees and related nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages," which motion must "be filed no later than 14 days after the entry of judgment." Fed. R. Civ. P. 54(d)(2)(A), (B). The Advisory Committee notes specify that "[a]s noted in subparagraph (A)," the provisions of paragraph (2) do "not, however, apply to fees recoverable as an element of damages, as when sought under the terms of a contract; such damages typically are to be claimed in a pleading and may involve issues to be resolved by a jury." Fed. R. Civ. P. 54, Advisory Committee Notes to Paragraph (2).

6. In *Capital Asset Research Corp. v. Finnegan*, 216 F.3d 1268 (11th Cir. 2000), the Eleventh Circuit analyzed a timeliness dispute concerning an award of attorney fees

4

pursuant to a contract specifying that "the prevailing party, either plaintiff or defendant, would be entitled to attorneys' fees." *Id.* at 1271. Capital Asset argued that "Finnegan should have sought attorneys' fees either before the 1997 judgment or within a short time thereafter (suggesting by analogy the 14-day period indicated in Rule 54(d)(2))." *Id.* Instead, Finnegan waited until the conclusion of its successful appeal to request the award of attorney fees. *Id.* The Eleventh Circuit "emphasize[d] that an award of attorneys' fees in circumstances such as those presented in this case is a matter addressed to the broad discretion of the district court." *Id.* There was no surprise or prejudice as the parties had agreed to the bifurcation of attorney fees. *Id.* Moreover "the contract was in evidence and expressly provided for attorneys' fees for the prevailing party, and only the identity of the prevailing party had to be established before that party's right to attorneys' fees became manifest." *Id.* at 1272; *see also, Engel v. Teleprompter Corp.*, 732 F.2d 1238 (5th Cir.1984) (holding that it was appropriate to award attorney fees, even though defendant did not seek attorney fees in its pleadings. The court noted that the contract was in evidence, the plaintiffs applied for a fee award, and "[o]nly the identity of the prevailing party had to be established before that party's right to this form of relief became manifest." Moreover, there was no prejudice to the plaintiffs.).[4]

---

[4] *Cf. Ray Haluch Gravel Co. v. Cent. Pension Fund of Int'l Union of Operating Eng'rs & Participating Empl'rs*, 134 S. Ct. 773, 782 (2014) (finding that the pendency of a ruling on an award for fees, whether based in statute or contract, does not prevent the merits judgment from becoming "final" for purposes of appeal, but noting in dicta that

> the [Federal] Rules [of Civil Procedure] eliminate concerns over undue piecemeal appeals in the vast range of cases where a claim for attorney's fees is made by motion under Rule 54(d)(2). That includes some cases in which the fees are authorized by contract. *See* 2 M. Derfner & A. Wolf,

5

7. In the case at bar, the 1991 Agreement was referenced in the complaint and known to the parties, eliminating contentions of surprise or prejudice at this juncture. In addition, the two agreements (signed by Medtronic, Guidant, Lilly and MVF) governing prior litigations specifically provided that notwithstanding the 1991 Agreement, the parties would bear their own costs and fees. MVF's argument - that Medtronic offered no proof at trial to prove its admitted contractual claim for fees and that Medtronic waived the attorney fees under the contract since such a claim was not in the pretrial order - do not pass muster. The only issue required for the application of the 1991 Agreement's "loser pays" provision is the determination of the prevailing party. Thus, there were no issues of fact to present to a jury. *E. Trading Co. v. Refco, Inc.*, 229 F.3d 617, 626-27 (7th Cir. 2000), amended on denial of reh'g (Nov. 29, 2000) (citations omitted) (finding that the issue of attorney fees should "be resolved after the trial on the basis of the judgment entered at the trial," when "[t]he customer agreement obligated Eastern to reimburse Refco for the cost (including reasonable attorneys' fees) of collecting any unpaid debit in the account." Defendant did not waive the issue by not specifying attorney fees as an issue for trial in the pre-trial order, because "[t]here was no issue of entitlement to attorneys' fees to submit to the jury."). The court concludes that Medtronic's motion is not time barred.

---

Court Awarded Attorney Fees ¶ 18.01[1][c], pp. 18–7 to 18–8 (2013) (remarking that Rule 54(d)(2) applies "regardless of the statutory, contractual, or equitable basis of the request for fees," though noting inapplicability where attorney's fees are an element of damages under the substantive law governing the action).

6

8. **The LTA.** The parties dispute whether the provision in the 1991 Agreement applies to the litigation at bar. Contract interpretation is a question of law.[5] *Travertine Corp. v. Lexington-Silverwood*, 683 N.W.2d 267, 271 (Minn. 2004) (citation omitted). "The primary goal of contract interpretation is to determine and enforce the intent of the parties." *Id.* (citing *Motorsports Racing Plus, Inc. v. Arctic Cat Sales, Inc.*, 666 N.W.2d 320, 323 (Minn. 2003)). The intent of the parties is determined from the plain language of the contract. *Id.* (citing *Metro. Sports Facilities Commn. v. General Mills*, 470 N.W.2d 118, 123 (Minn. 1991)). "We have consistently stated that when a contractual provision is clear and unambiguous, courts should not rewrite, modify, or limit its effect by a strained construction." *Id.* (citations omitted).

9. The parties to the LTA painstakingly modified many of the clauses of the 1991 Agreement.[6] The LTA acknowledges that Lilly granted Medtronic a sublicense for certain patents pursuant to the 1991 Agreement (D.I. 285, ex. E at 1); notes that Medtronic may challenge the validity of the '119 patent through declaratory actions as provided in the 1991 Agreement (*id.*); establishes payment to MVF of a portion of the royalties accrued pursuant to the 1991 Agreement (*id.* at ¶ 3); provides that the parties agree to not terminate the 1991 agreement (*id.* at ¶ 4); tolls the initiation of declaratory actions and defenses pursuant to the 1991 agreement (*id.* at ¶¶ 5-6); specifically sets terms for the filing of a declaratory action "notwithstanding any provisions to the contrary in the [1991] Agreement" (*id.* at ¶ 8); and establishes how Medtronic will pay royalties under the 1991 agreement (*id.* at ¶ 10). The LTA concludes by stating that the 1991

---

[5] The 1991 Agreement and the 2006 Litigation Agreement are governed by Minnesota law. (D.I. 285, ex. A at 12, ex. E at ¶ 16)
[6] Defined in the 2006 Litigation Agreement as the "Medtronic Agreement."

7

Agreement "shall be considered to be amended as necessary to conform with" the LTA. (*Id.* at ¶ 15) As to the attorney fee provisions, the LTA added an attorney fee provision regarding any disputes over royalty disbursements. (*Id.* at ¶ 11) However, there is no indication in the contract language that the parties modified or eliminated the "loser pays" provision of the 1991 Agreement.

> 10. The 1991 Agreement provides that
>
> Medtronic shall . . . have the right to challenge the validity and enforceability of any patent under the [MVF] license . . . and shall have the right to challenge **Lilly's** assertion of infringement of any of the [MVF] patents through a Declaratory Judgment action. . . . **In any such litigation**, the losing party shall pay all reasonable attorneys' fees and court costs for the winning party . . . .

(D.I. 285, ex. A at 6) (emphasis added) MVF argues that the structure of this provision, i.e., the use of "in any such litigation," limits the provision to assertions of infringement by Lilly. The court does not find such argument persuasive, as the parties modified who may bring infringement assertions in the LTA. The court concludes that the LTA did not "supersede" or eliminate the attorney fee provision of the 1991 Agreement.

> 11. Having found that the attorney fee provision in the 1991 Agreement applies to the litigation at bar, the court now turns its attention to defendants' arguments that the provision does not apply to them. MVF argues that, because it is not a signatory (or a party) to the 1991 Agreement, it is not bound by the attorney provision. Medtronic avers that the theory of equitable estoppel should apply because MVF has received benefits through the 1991 Agreement and, therefore, should be estopped from denying its obligation to honor the attorney fee provision. *See M.A. Mortenson Co. v. Gem Mechanical Services, Inc.*, 2006 WL 1997367, at *3 (D. Minn., July 14, 2006) (holding that "a nonsignatory is estopped from denying its obligation to arbitrate when it receives

8

a 'direct benefit' from a contract containing an arbitration clause."). Moreover, MVF has on two occasions signed contracts which each included a provision that, notwithstanding the 1991 Agreement, the parties would bear their own costs and fees. (D.I. 284 at 3; D.I. 288 at 4-5; D.I. 285, ex. C-D) Having executed contracts like the LTA which modify the 1991 Agreement, the court concludes that MVF should be bound by the 1991 Agreement's attorney fee obligation.

12. BSC and Guidant did not assert infringement of the MVF patents. Instead, MVF notified Medtronic of potential infringement on October 3 and November 20, 2007 pursuant to the LTA. (D.I. 290, ex. 3) Consistent with the language of the 1991 Agreement's fee provision which places the obligation to pay attorney fees on the party asserting infringement (if such party loses), MVF is the party responsible for the attorney fees in the case at bar.

13. **Conclusion.** For the aforementioned reasons, plaintiff's motion for attorney fees (D.I. 283) is granted. An order shall issue.

United States District Judge